

# IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE SOUTHERN DISTRICT OF TEXAS
### HOUSTON DIVISION

**ENTERED**
**09/26/2014**

| | | |
|---|---|---|
| IN RE: | § | |
| | § | **CASE NO: 09-38232** |
| HARLON  BROOKS, *et al* | § | **CHAPTER  7** |
| | § | |
| Debtor(s). | § | **DAVID R. JONES** |
| | § | |
| JPMORGAN CHASE BANK, N.A. | § | |
| | § | |
| Plaintiff(s), | § | |
| | § | |
| vs. | § | **ADVERSARY NO. 13-3064** |
| | § | |
| W. STEVE SMITH | § | |
| | § | |
| Defendant(s). | § | |

## MEMORANDUM OPINION

In this adversary proceeding, J.P. Morgan Chase, N.A. ("Chase") seeks a declaratory judgment that its interest in certain cash proceeds is superior to that of the chapter 7 trustee.  For the reasons set forth below, the Court finds that the proceeds are estate property under 11 U.S.C. § 541 and that Chase has no interest in the proceeds.  A separate judgment consistent with this opinion will issue.

## Background

### The Individual Case

Harlon and Alfreddie Brooks filed a voluntary chapter 13 case on October 30, 2009 [Docket No. 1, Case No. 09-38232].  The case was converted to a chapter 11 case by order entered April 6, 2010 [Docket No. 39, Case No. 09-38232].

During a confirmation hearing on June 30, 2010, counsel for Mr. and Mrs. Brooks orally moved to appoint a chapter 11 trustee.  The Court granted the motion by order entered July 6, 2010 [Docket No. 88, Case No. 09-38232].   On July 15, 2010, the United States Trustee filed its motion to appoint W. Steve Smith as the chapter 11 trustee in the case [Docket No. 90, Case No. 09-38232].  The Court approved Mr. Smith's appointment on July 23, 2010 [Docket No. 91, Case No. 09-38232].

On November 2, 2010, Mr. Smith filed his emergency motion to convert the case to chapter 7 [Docket No. 104, Case No. 09-38232]. The Court granted the trustee's motion and converted the case to chapter 7 on November 4, 2010 [Docket No. 114, Case No. 09-38232]. Mr. Smith was subsequently appointed by the United States Trustee as the chapter 7 trustee in the case.

**The Corporate Affiliate Cases**

Mr. and Mrs. Brooks owned and operated a number of barbecue restaurants throughout Texas. These restaurants were operated through a complex web of corporate affiliates. Documentation of the structure and business affairs of the entities is shoddy at best. Corporate formalities were routinely ignored. The lines of authority and ownership are blurred.

In early November, 2010, Mr. Smith installed himself as an officer/control person of the Brooks' entities and filed chapter 7 cases on behalf of a number of affiliates including (i) Brooks & Brooks, Inc. [Case No. 10-40117]; (ii) Airport Restaurant Management Corporation ("ARMC") [Case No. 10-40115]; (iii) Alfreddie, Inc. ("Alfreddie") [Case No. 10-40116]; (iv) Buckshot Construction Co. d/b/a Harlon's BBQ House [Case No. 10-40118]; (v) Harlon's Bar-B-Q at Old Spanish Trail, LP [Case No. 10-40122]; (vi) Harlon's UTMB, LP [Case No. 10-40119]; and (vii) Harlon's Barbeque Bar & Grill DFW-I, LP ("Harlon's Bar & Grill") [Case No. 10-40121]. The United States Trustee appointed Mr. Smith as the chapter 7 trustee in each case. On November 4, 2010, the Court ordered the joint administration of the seven affiliate cases and the Brooks' individual case. [Docket No. 117, Case No. 09-38232]. On May 14, 2013, Allison Byman succeeded Mr. Smith as the chapter 7 trustee (the "Trustee") in each of the eight cases [Docket No. 380, Case No. 09-38232].

**The Sale Transaction**

By agreement dated August 16, 2006, ARMC, Harlon's Bar & Grill, and Alfreddie sold five restaurant locations at the Dallas-Fort Worth International Airport, a commissary and related assets to Southwest Minority Financial Group, Inc. ("SMFG") [Exhibit 1]. Harlon's Bar-B-Q DFW, Ltd. Co. ("Harlon's BBQ"), a non-debtor affiliate, was subsequently added as a seller [Exhibit 3]. As part of the consideration for the sale, the purchaser provided a note in the amount of $1.25 million payable jointly to ARMC, Harlon's Bar & Grill, Alfreddie and Harlon's BBQ (the "SMFG Note") [Exhibit 4]. The note provided for monthly payments with a balloon payment due on November 13, 2007 [Exhibit 4]. The note was secured by a lien on the transferred assets in favor of ARMC, Harlon's Bar & Grill, and Alfreddie [Exhibit 11].

Chase asserted a lien on all assets of ARMC and Alfreddie as reflected in a forbearance agreement dated November 13, 2006 with ARMC, Alfreddie, Brooks and Brooks, Inc., Nolrah Concessions, Inc., Harlon Brooks and Hamco Airport Concessions, Inc. (the "Forbearance Parties") [Exhibit No. 5]. Under the agreement, the Forbearance Parties agreed to cause SMFG to make certain payments to Chase on their pre-existing debt [Exhibit No. 5]. In an apparent effort to meet this obligation, the SMFG Note contains the following provision:

Borrower [SMFG] promises to pay to the order of Lender [ARMC, Harlon's Bar & Grill, Alfreddie and Harlon's BBQ], as provided herein, the Principal Amount plus interest at the Annual Interest Rate according to the Terms of Payment. Notwithstanding anything to the contrary in this note, the following payments under this note shall be paid directly to JP Morgan Chase Bank, N.A. by Borrower for the account of Lender: (a) $15,000 of each $25,947.94 monthly installment; (b) the full amount of the Interim Payment; and (c) such amount of the Final Payment or any prepayment under this note as is necessary to cause JPMorgan Chase Bank, N.A. to release all of its liens on the assets sold to Borrower by Lender (the "Purchased Assets") pursuant to that certain Asset Purchase Agreement between Lender and Borrower dated as of August 16, 2006 (as amended, the "Asset Purchase Agreement").

[Exhibit 4].

As of the date of the corporate affiliate bankruptcy filings, (i) the SMFG Note had not been paid in full; (ii) the perfection of Chase's security interest had lapsed; and (iii) ARMC, Harlon's Bar & Grill, and Alfreddie had not perfected their lien against the purchased assets. Shortly after his appointment as trustee, Mr. Smith perfected the lien jointly held by ARMC, Harlon's Bar & Grill, and Alfreddie and initiated collection activities against SMFG.

On November 26, 2012, the Court approved a compromise between the Trustee and SMFG [Docket No. 364, Case No. 09-38232]. Under the compromise, SMFG paid the Trustee the sum of $350,000 (the "Settlement Payment") in full and final satisfaction of the SMFG Note [Docket No. 364, Case No. 09-38232].[1]  On December 5, 2012, Chase filed a motion to reconsider asserting that the Settlement Payment should be paid to Chase and not the Trustee [Docket No. 367, Case No. 09-38232]. Because the compromise was not dispositive of any party's rights in the Settlement Payment, the Court denied Chase's motion on December 7, 2012 without prejudice to the filing of a contested matter/adversary proceeding as appropriate to determine Chase's entitlement to any or all of the Settlement Payment [Docket No. 368, Case No. 09-38232].

On March 27, 2013, Chase filed this adversary proceeding seeking a declaration of its entitlement to the Settlement Payment under various theories [Docket No. 1, Adv. No. 13-3064]. Chase also requested an award of attorney's fees [Docket No. 1, Adv. No. 13-3064]. Both the Trustee and Chase filed motions for summary judgment on February 14, 2014 [Docket Nos. 32 and 33, Adv. No. 13-3064]. The Court denied both motions by order entered April 22, 2014 [Docket No. 48, Adv. No. 13-3064]. On May 28, 2014, the Court held a final pre-trial hearing. At that hearing, the parties agreed that certain deposition testimony would be jointly submitted along with factual stipulations and agreed exhibits [Docket No. 52, Adv. No. 13-3064]. The Court set a trial date for July 2, 2014 [Docket No. 52, Adv. No. 13-3064].

---

[1]    All rights of any party claiming an interest in the Settlement Payment were preserved.  The compromise had no bearing on the determination of any issue presented in this adversary proceeding.

## The Trial

In their Joint Pre-Trial Statement [Docket No. 51, Adv. No. 13-3064], Chase and the Trustee stipulated to certain facts. These facts are repeated below in their entirety and in the form submitted:

1.  SWMFG [Southwest Minority Financial Group, Inc.] purchased five restaurants at the Dallas Fort Worth International Airport. The details of the restaurant sales are set forth in the August 16, 2066 Asset Purchase Agreement. Ex. 1

2.  SWMFG was the Buyer. Ex. 1

3.  The Sellers were Debtors ARMC, Harlan's Bar & Grill, and Alfreddie. Ex 1

4.  The Sellers were all owned and controlled by Harlon and Alfreddie Brooks.

5.  The purchase price to be paid by SWMFG under the Asset Purchase Agreement was $2,500,000 (Two Million Five Hundred Thousand Dollars). Ex. 1

6.  There was a First Amendment to the Asset Purchase Agreement effective September 24, 2006. Ex 2

7.  A Joinder to the Asset Purchase Agreement added Harlon's BBQ as a "Seller." Ex. 3

8.  The purchase price to be paid under the Asset Purchase Agreement consisted of cash and a Promissory Note dated November 13, 2006 in the amount of $1,250,000 (One Million Two Hundred-fifty Thousand Dollars) (as previously defined, the "Note"). Exhibit 4

9.  The "Borrower" in the Note is defined as SWMFG. Ex 4.

10. The "Lender" in the Note is defined as the Sellers- ARMC, Harlan's Bar & Grill, Alfreddie and Harlon's BBQ. Ex. 4

11. The Note expressly states "Borrower promises to pay to the order of Lender, as provided herein the Principal Amount plus interest at the Annual Interest Rate according to the Terms of Payment." Ex. 4

12. The Note expressly states: "the following payments under this Note shall be directly paid to JPMorgan Chase Bank, N.A. by Borrower for the account of Lender." Ex. 4

13. The Note calls for monthly payments of $25,947.94. Ex. 4

14. Pursuant to the Note, $15,0000 of each $25,947.94 monthly installment is to be paid to Chase by SWMFG. Ex. 4

15. None of the Debtors signed the Note. Ex. 4

16.    The Note is personally guaranteed by Stanley Hatcher, George Johnson Jr., Howard Hatcher, L. Clifford Davis, Michael P. Heiskell, Leslie C. Johns, and J. Don Carter. Ex. 4

17.    A security interest was granted by Security Agreement dated November 13, 2006 (the "Security Agreement") in the assets (the "Assets") purchased by SWMFG from ARMC, Harlon's Bar & Grill and Alfreddie pursuant to the Asset Purchase Agreement between these same parties. Ex. 10

18.    The Security Agreement was in favor of ARMC, Harlon's Bar & Grill and Alfreddie. Ex. 10

19.    The security interest in the Assets was perfected by the prior Chapter 7 Trustee on October 15, 2012. Ex. 11

20.    On November 13, 2006, the same day the Note was signed, Chase entered into a Forbearance Agreement with ARMC, Alfreddie, Brooks & Brooks, Inc. and Nolrah Concessions, Inc.  Ex. 5

21.    The Forbearance Agreement defines Chase as the "Lender."  ARMC, Alfreddie, Brooks & Brooks, Inc. and Nolrah Concessions, Inc. are defined as the "Borrower".  Harlon Brooks and Hamco Airport Concessions are defined as the "Guarantor". Ex. 5

22.    Neither Harlon's Bar & Grill nor Harlon's BBQ is a signatory to the Forbearance Agreement. Ex. 5

23.    In the Forbearance Agreement the "Borrower" acknowledges that they owed the "Lender", Chase, as of November 9, 2006, a principal balance of $1,143,131.18. Ex. 5

24.    The Forbearance Agreement in Paragraph 4 provides that the "Borrower and Guarantor promise to require" SWMFG to make specified payments to Chase, including the $15,000 per month. Ex. 5

25.    SWMFG made monthly payments of at least $15,000 to Chase from November 2006 until July 2010. Ex. 6 & 7

26.    Payments to Chase stopped after Harlon Brooks and Brooks & Brooks filed bankruptcy. Ex. 6 & 7

At trial, the parties jointly submitted 11 exhibits which the Court admitted by agreement. In addition, the parties jointly offered and the Court admitted the depositions of Harlon Brooks, taken on January 16, 2014, and Stanley Hatcher, taken January 14, 2014.  The Court has reviewed these transcripts in their entirety.  Finally, Chase called Esther Bullock as a witness. Ms. Byman also testified in her capacity as trustee.  Based on the evidence received, the Court makes the following findings of fact and conclusions of law.

## Analysis

The Court has exclusive jurisdiction over this adversary proceeding pursuant to 11 U.S.C. § 1334(e).  This adversary proceeding is a core proceeding arising under title 11 pursuant to 28 U.S.C. § 157(b).  The Court has constitutional authority to enter a final order in this matter under the Supreme Court's holding in *Stern v. Marshall*, 131 S.Ct. 2594 (2011).

Chase seeks a declaration that it is entitled to the Settlement Payment under several alternative theories. First, Chase asserts that it was the payee under the SMFG Note.  Second, Chase asserts that it was assigned a portion of the payments to be made by SMFG under the SMFG Note.  Third, Chase asserts that it is a third-party beneficiary under the SMFG Note. Finally, Chase asserts that it holds a valid, perfected security interest in the SMFG Note.  The Court will address each of Chase's theories in turn.

## "Count 1: Determination of the Validity, Extent and Interest in Note Express Terms of Note"

Chase first asserts that the Settlement Payment is not property of the affiliate debtors' estates.   Chase's basis for this position is that it is "identified in the Note as the party to be paid at the order of Lender." Complaint at ¶ 24.  Chase reasons that because it is the payee under the Note, the Settlement Payment is its property free of any claim by the Trustee.  In making this argument, Chase points to the following provision in the SMFG Note:

> Borrower promises to pay to the order of Lender, as provided herein, the Principal Amount plus interest at the Annual Interest Rate according to the Terms of Payment.  Notwithstanding anything to the contrary in this note, the ***following payments under this note shall be paid directly to JPMorgan Chase, N.A. by Borrower*** for the account of Lender: …

[Exhibit 4 (*emphasis supplied*)].

Chase argues that Article 3 of the Texas Uniform Commercial Code supports its conclusion.  Specifically, Chase asserts that it is a payee under the SMFG Note pursuant to § 3.109(b).  Section 3.109(b) provides:

> A promise or order that is not payable to bearer is payable to order if it is payable (i) to the order of an identified person, or (ii) to an identified person or order.  A promise or order that is payable to order is payable to the identified person.

TEX. BUS. COM. CODE ANN. § 3.109(b) (Vernon 2011).

Section 3.109 of the Texas UCC is titled "Payable to Bearer or Order.  The section sets out two types of negotiable instruments.  A negotiable instrument can be payable to bearer or payable to the order of a specific party.  The first is an instrument where the payee is not specified and the holder of the instrument is entitled to payment.  An example of such an instrument is a bearer bond.  The second type, defined in § 3.109(b), is an instrument where the

payee is specifically identified.   The method for creating this instrument is including the language "pay to the order".  22 WILLISTON ON CONTRACTS § 60:9 (4th Ed.).  The words "pay to the order" are commonly viewed as "magic" words required for creating negotiability of a note.  *Id.*; *See Acceptance Corp. v. York Universal Premium Bank & Trust Co.*, 69 F.3d 695, 699 (3d Cir. 1995).

In advancing this theory, Chase ignores the plain language of the SMFG Note.  The SMFG Note does not say "pay to the Order of Chase".  To the contrary, the SMFG Note provides that "Borrower promises to *pay to the order of Lender* [ARMC, Harlon's Bar & Grill, Alfreddie and Harlon's BBQ]. . ." (emphasis supplied).  Put simply, Chase is not a payee of the SMFG Note under Article 3.

The SMFG Note does, however, contain a reference to payments to Chase.  The reference provides that "[n]otwithstanding anything to the contrary in this note, the *following payments under this note shall be paid directly to JPMorgan Chase, N.A. by Borrower **for the account of Lender*** [the debtors]: …" [emphasis supplied]. [Exhibit 4].  Chase ignores the language after "pay directly to JPMorgan Chase, N.A. by Borrower" which states that payments to Chase are being made "for the account of Lender".  The clause "for the account of Lender" modifies the provision "shall be paid".  In context, the provision directs that the Borrower make certain payments directly to Chase for the benefit of the Lender's account.  Such a provision does not create an ownership interest in favor of Chase.  To the contrary, the language establishes that amounts owed under the SMFG Note are property of the affiliate debtors' estates.  Chase's request for a declaration under Count 1 is denied.

## "Count 2: Declaratory Judgment as to Proceeds of Note by Assignment"

Chase next requests a declaration that it is entitled to the Settlement Payment as the assignee of the SMFG Note.  Complaint at ¶ 27.  Specifically, Chase asserts that the express terms of the SMFG Note and the Forbearance Agreement reflect an assignment.   The Court can find no such assignment in the SMFG Note or any other document offered by the parties.

The most common method of assigning a note is through an indorsement and delivery of the note to the proposed assignee.  An "indorsement" includes "a signature . . . that alone or accompanied by other words is made on an instrument for the purpose of . . . negotiating the instrument."  TEX. BUS. COM. CODE ANN. § 3.204(a) (Vernon 2011).  Such an indorsement may be either a "special indorsement" or a "blank indorsement."   *See* TEX. BUS. COM. CODE ANN. § 3.205 (Vernon 2011).  A "special indorsement" specifically "identifies a person to whom it makes the instrument payable."  TEX. BUS. COM. CODE ANN. § 3.205(a) (Vernon 2011).

The maker of a note is obligated to make payments to the "person entitled to enforce the instrument."  TEX. BUS. COM. CODE ANN. § 3.412 (Vernon 2011).  Persons entitled to enforce a note include "(i) the holder of the instrument, [and] (ii) a nonholder in possession of the instrument who has the rights of a holder."  TEX. BUS. COM. CODE ANN. § 3.301 (Vernon 2011).  Accordingly, an entity seeking to enforce a note must establish either (i) that it is a "holder" of the note; or (ii) that it is a transferee with the rights of a holder. *See Id.*  An indorsement is considered to be made "on an instrument" for purposes of negotiation when it is made either on

the note itself or on a separate paper (an allonge) that is affixed to the note. TEX. BUS. COM. CODE ANN. § 3.204(a) (Vernon 2011).

There is no indorsement of the SMFG Note.  The Lender did not sign the SMFG Note. There are no signatures on the SMFG Note other than those of the Borrower.  No allonge to the SMFG Note evidencing an assignment was produced at trial.  No evidence of any other form of assignment was introduced at trial.  Based on the evidence presented, the Court finds that the SMFG Note could not have been negotiated or enforced by Chase.

Again, Chase appears to rely on the provision of the SMFG Note that provides that the Borrower will make certain payments directly to Chase for Lender's account.  Chase offered no legal support, and the Court cannot locate any, for the notion that payments made under a note held by a third party to a bank for the account of the third party create an assignment of an ownership interest in favor of the bank.

Chase also asserts that the Forbearance Agreement contains an assignment of the SMFG Note.  As an initial matter, Chase failed to explain how the Forbearance Agreement can operate as a voluntary assignment of the SMFG Note as to holders that are not signatories to the Forbearance Agreement.  Moreover, the Forbearance Agreement contains no assignment of any interest in favor of Chase.  At best, the document contains a promise by two holders of the SMFG Note to get SMFG to pay their debt to Chase.

The Court is unpersuaded by Chase's argument that it is an assignee of the SMFG Note. The evidence presented to the Court confirms that no assignment was made and that the SMFG Note is estate property.  Chase's request for a declaration under Count 2 is denied.

## "Count 3: Declaratory Judgment as to Proceeds of Note as Third-Party Beneficiary"

Chase's third alternative theory is that it is a third-party beneficiary under the SMFG Note and is therefore entitled to receive a specified amount under the SMFG Note. Chase seeks a declaration that its rights as a third-party beneficiary under the SMFG Note supersede any rights the Trustee may have to the Settlement Payment. Complaint at ¶ 29.

A third party may enforce a contract when the parties to the contract entered into the agreement with the primary purpose of directly benefitting the third party. *Basic Capital Management, Inc. v. Dynex Commercial, Inc.*, 348 S.W.3d 894, 899-901 (Tex. 2011) (*quoting Banker v. Breaux*, 133 Tex. 183, 128 S.W.2d 23, 24 (1939); *MCI Telecomms. Corp. v. Tex. Utils. Elec. Co.*, 995 S.W.2d 647, 651 (Tex. 1999). When the contract confers only an indirect, incidental benefit, a third party cannot enforce the contract. *Basic Capital*, 348 S.W.3d at 898*; see also* RESTATEMENT (SECOND) OF CONTRACTS § 315 (1981); 13 WILLISTON ON CONTRACTS § 37:19, at 124-25 (4th ed. 2000) ("An incidental beneficiary acquires no right either against the promisor or the promisee by virtue of the promise.").

Texas courts maintain a presumption against third-party beneficiary agreements. *MCI*, 995 S.W.2d at 651; *Corpus Christi Chase & Trust v. Smith*, 525 S.W.2d 501, 503-04 (Tex. 1975).  In the absence of a clear and unequivocal expression of the contracting parties' intent to

directly benefit a third party, courts will not confer third-party beneficiary status by implication. *MCI*, 995 S.W.2d at 651. "The intention to contract or confer a direct benefit to a third party must be clearly and fully spelled out or enforcement by the third party must be denied." *Basic Capital*, 348 S.W.3d. at 900.

When discerning the contracting parties' intent, courts must examine the entire agreement and give effect to each provision so that none is rendered meaningless. *Seagull Energy E & P, Inc. v. Eland Energy, Inc.*, 207 S.W.3d 342, 345 (Tex. 2006); *Stine v. Stewart*, 80 S.W.3d 586, 589 (Tex. 2002) (per curium). "No single provision taken alone will be given controlling effect; rather, all the provisions must be considered with reference to the whole instrument." *Coker v. Coker*, 650 S.W.2d 391, 393 (Tex. 1983). All doubts must be resolved against conferring third-party beneficiary status. *See MCI*, 995 S.W.2d at 652.

For a creditor to qualify as a third-party beneficiary, the parties to the contract must not only intend to confer a benefit on the creditor, but they must further intend for the creditor to have the right to enforce the agreement. "Unless both intents were exhibited on his behalf, the third party remains no more than an incidental beneficiary." *MJR Corp. v. B&B Vending Co.*, 760 S.W.2d 4, 16 (Tex. App.—Dallas 1988, writ denied).

The SMFG Note directs SMFG to pay to the order of the Lender (ARMC, Harlon's Bar & Grill, Alfreddie and Harlon's BBQ) the sum of $1,250,000. The SMFG Note arose out of the August 16, 2006 Asset Purchase Agreement between the lender and SMFG. The Asset Purchase Agreement specifically excludes certain contracts from the purchase, and it defines "Excluded Contracts" in paragraph 1.1(b) and in Schedule 3 as being "Any and all agreements between any Seller and JP Morgan Chase Bank, N.A." [Exhibit 1].

There is no indication that the parties to the sale transaction intended for Chase to be the direct beneficiary of the transaction. The available evidence suggests the contrary intent. The parties jointly offered the deposition testimony of Stanley Hatcher. Mr. Hatcher is the president and chief executive officer of SMFG. *Hatcher Transcript 6:17-18*. Mr. Hatcher testified that he was a practicing attorney prior to forming SMFG in November 2006. *Hatcher Transcript 7:10-12*. Mr. Hatcher played a key role on behalf of SMFG in the acquisition of the restaurants. *Hatcher Transcript 9:3-10:7*. Mr. Hatcher stated that prior to purchasing the restaurants, he never had a conversation with Chase. *Hatcher Transcript 18:10-11*. Mr. Hatcher was unfamiliar with Chase's arrangement with any of the debtors. *Hatcher Transcript 18:16-19*. Likewise, Mr. Hatcher was not familiar with the Forbearance Agreement. *Hatcher Transcript 18:21-19:1*. Hatcher stated that the SMFG Note was the result of the Lender's agreement to provide owner financing to SMFG. *Hatcher Transcript 19:19-23*. Finally, Mr. Hatcher testified that his understanding was that SMFG purchased restaurants from the debtors and that it was the debtors who were entitled to the money. *Hatcher Transcript 41:21-42:1*. Likewise, the deposition testimony of Harlon Brooks fails to establish that Chase was intended to be a direct beneficiary of the sale transaction.

Chase offered the testimony of Ms. Bullock to bolster its position. Ms. Bullock is the Chase officer that inherited the debtors' loan file after the prior responsible officer passed away. Ms. Bullock has no personal knowledge of the sale transaction, the documentation or the

negotiations that precipitated the sale. Although Ms. Bullock testified that she believed Chase would have the right to file a lawsuit against SMFG, she could not state a legitimate basis for her belief or what the claim would be.  Ms. Bullock's beliefs are also irrelevant in determining the sale parties' intent.

Even if Chase was a third-party beneficiary, Chase would have, at most, a breach of contract claim against the debtors' estates.  S*ee, e.g., Mechanical & Elec. Concepts, Inc. v. Caltex Holdings LP (In re Caltex Holdings LP (In re Caltex Holdings LP)*, Adv. No. 09-3145, 2010 WL 1190304, at *3 (Bankr. S.D. Tex. Mar. 22, 2010).  Chase's only remedy at this stage is to file an unsecured proof of claim for any damages caused by the purported breach. S*ee, e.g., Mechanical & Elec. Concepts, Inc. v. Caltex Holdings LP (In re Caltex Holdings LP (In re Caltex Holdings LP)*, Adv. No. 09-3145, 2010 WL 1190304, at *3 (Bankr. S.D. Tex. Mar. 22, 2010).

Chase presented no evidence that it is a third-party beneficiary under the SMFG Note. Even if it were a third-party beneficiary, Chase's rights as an unsecured creditor would not supersede the Trustee's right to the Settlement Payment on behalf of the estates.  Chase's request for a declaration under Count 3 is denied.

## "Count 4: Declaratory Judgment as to Security Interest"

In its final claim, Chase seeks a declaration that any security interest perfected by the Trustee serves as its collateral.  More specifically, Chase asserts that "any security interest perfected by the Trustee secures all obligations under the Note, not just the amounts owing by SMFG to the Debtors." Complaint at ¶ 31.  Chase offered no substantive argument or any evidence in support of this theory.  Chase offered no explanation of how the lapse of its security interest was revived or how the Trustee's post-petition perfection of the Debtors' lien served to enhance its position as a creditor in this case.  Indeed, Chase's requested declaration would have the Trustee's post-petition acts serving as a perfection mechanism for its pre-petition claims. Such a result would run afoul of 11 U.S.C. § 544.  Chase's request for a declaration under Count 4 is denied.

## Attorneys' Fees and Expenses

Chase requests an award of attorneys' fees under FED. R. BANK. P. 7008(b). Chase presented no basis for the award of attorneys' fees.  Even if it had prevailed in this adversary proceeding, at the core of this dispute is Chase's decision to let its financing statement lapse and its use of shoddy documentation.  Chase's claim for attorneys' fees and expenses is denied.

**Conclusion**

For the reasons set forth above, the Court finds that the Settlement Payment is estate property and that Chase has no interest in the proceeds other than potentially as an unsecured creditor entitled to a distribution under 11 U.S.C. § 726.  All relief requested by Chase is denied. A separate judgment consistent with this opinion will issue.

**SIGNED: September 25, 2014.**

**DAVID R. JONES**
**UNITED STATES BANKRUPTCY JUDGE**